E. Ivan Rubenstein, J.
Relator, who, on behalf of the defendants Mallach and Price sues out this writ of habeas corpus, invokes- the legal principle that no one shall twice be put in jeopardy for the same offense. (N. Y. Const., art I, § 6; Penal Law, §§ 33, 1938; Code Crim. Pro., §§ 9, 139.)
Indicted heretofore on a felony charge of abortion (Penal Law, § 80), such defendants stood trial in the County Court of Queens County, as a result of which such charge against the defendant, Marie Price, was dismissed. As against the defendant Elizabeth Mallach, the jury returned a verdict of not guilty.
Under an information presented to the Court of Special Sessions of the said county, the District Attorney now accuses such defendants of the crime of practicing medicine without a license — a misdemeanor under section 1263 of the Education Law. The issue under the writ comes before this court on stipulated facts.
The abortion indictment was on two counts, charging identical acts but on different dates, the first on or about December 30, 1943; the second, on or about June 13, 1944. The information, subsequently drawn, likewise contains two counts, but it is conceded that the first of these is to be disregarded, respondents relying on the sufficiency and efficacy of the accusation made in the second which charges, in substance, that the defendants *15 ‘ ‘ acting in concert and aiding and assisting one another, on or about June 13th, 1944 and at divers times thereafter at the premises 150-45 125th Street, South Ozone Park, in the County of Queens, not being then and there licensed and registered as a physician according to law, unlawfully practiced medicine upon one Anne Flynn * * * by unlawfully holding themselves out to said Anne Flynn as being able to diagnose, treat, operate and prescribe for a human disease, pain, injury, deformity and physical condition of said Anne Flynn by then and there offering to and undertaking for said Anne Flynn to diagnose, treat, operate and prescribe for a human disease, pain, injury, deformity and physical condition of said Anne Flynn ’ ’.
It is not disputed that the circumstances out of which sprang the charges contained both in the indictment and in the information were the same. Insofar as they relate to what transpired “on or about June 13th, 1944” the indictment, in the second count thereof, couched the accusation against the defendants in language, as follows, namely, that “ The defendants above named, each aiding the other, on or about June 13th, 1944 in the County of Queens, (prescribed, supplied and administered a certain medicine, drug and substance to, and) used an instrument upon Anne Flynn the exact nature of all of which are unknown to this Grand Jury, with intent thereby to procure the miscarriage of said woman, the same not being necessary to preserve her life or the life of the child with which she was then pregnant.”
Examining now the stipulated proof adduced at the former trial, upon a repetition of which respondents depend, we find that the testimony first relied on is that of the complaining witness, Anne Flynn, which, insofar as it appears relevant, is substantially as follows:
“ That in the morning of June 13th, she came to Mrs. Mallach’s home and told the latter that she, Anne Flynn, was feeling very sick. Mrs. Mallach said she would take care of her. ‘ Mrs. Price was only listening; she (Mrs. Price) had nothing to do with it.’ She then went into the bedroom with Mrs. Mallach who inserted a rubber tube into her vaginal cavity.
“ She remained at Mrs. Mallach’s home for a week and was fed and taken care of by her. Mrs. Price also fed her; gave her' sponge baths and took care of her bed clothes during that week.”
About two weeks later she returned to Mrs. Mallach’s home, remaining until the end of June or the beginning of July. No further treatments during this period were testified to.
*16 Doctor Sternschein. This witness examined the complainant subsequent to her arrest (on July 2) and found her suffering, in his opinion, from the effects of an incomplete abortion.
Hazel Burke. The testimony of this witness is that on June 12 or 13 she visited Anne Flynn at the Mallach home where she found her in bed; that she saw Mrs. Price bring her food and bathe her vaginal parts; that she observed that the bed clothing was stained. On the following day she called again and saw the same acts being performed.
(The testimony of the witness Thompson and that portion of the stipulation dealing with medication given in March, 1944, are disregarded in view of the concession between the attorneys that nothing is to be considered which occurred prior to June 13, 1944.)
The stipulation also contains the following:
‘ ‘ VI. That in the charge to the jury on the trial in the County Court, the presiding judge permitted the jury to find the defendant Mallach guilty if they found beyond a reasonable doubt that she, with intent thereby to procure the miscarriage of Anne Flynn prescribed, supplied or administered to the latter, or advised, or caused her to take any medicine, drug or substance; or used, or caused to be used any instrument or other means upon said Anne Flynn.”
It would appear, from the foregoing analysis, that the very proof essential to sustain the accusation of abortion is relied upon to sustain the information charge of practicing medicine without a license.
The decisive issue involved herein is whether the proof as outlined above can be separated so as to permit of the conclusion that the acts related, even if admittedly sufficient, to sustain a charge of illegal practice of medicine, can be divorced and considered apart from and independent of the acts allegedly committed by defendants in connection with the claimed abortion. If so, they would be susceptible of an interpretation that more than one offense was committed; if not, such interpretation cannot be indulged. In my opinion, they cannot be so separated.
Admittedly, it is difficult to determine in many situations when a defendant has been placed in former jeopardy. The difficulty is not so much in a statement of the rules of law governing same but in the application thereof to a given state of facts. On one thing, however, there is virtual agreement — there can be but one prosecution, one jeopardy, for the same ‘ ‘ offense ’ ’, providing the substantive ingredients thereof are so interwoven as to make it legally impossible to consider it *17 separate and apart from another “ offense ” sought to he charged.
As stated in Corpus Juris Secundum (Yol. 22, Criminal Law, § 278, p. 414): “ The prohibition of the common law and of the constitutions is against a second jeopardy for the same ‘ offense ’, that is, for the identical act and crime; or, as expressed in a number of cases, to entitle accused to plead successfully former jeopardy, the offenses charged in the two prosecutions must be the same in law and in fact. The plea will be vicious if the offenses charged in the two indictments are perfectly distinct in point of law, however nearly they may be connected in point of fact. It is not necessarily decisive that the two offenses may have some material fact or element in common, or that they are similar, where they are not in fact the same, as the test is not whether accused has already been tried for the same act, but whether he has been put in jeopardy for the same offense. The term ‘ same offenses ’, however, does not signify the same offense eo nomine, hut the same criminal act, transaction, or’ omission-, and it is not essential, to sustain a plea of former jeopardy, that the indictment or information be in identical language, nor that the proofs in the two prosecutions be identical ; it is sufficient if an acquittal of the offense charged in the first indictment virtually includes an acquittal of that set forth in the second, however much they may differ in degree, and it has been held that a judgment in a criminal case is a bar to a subsequent prosecution for any offense which could have been proved under the indictment. From these rules it follows that where distinct offenses are committed at different times or places, a prosecution for one is no bar to prosecution for the other.” (Emphasis added.)
In attempting to determine what constitutes double jeopardy, various tests have been applied, such as (1) whether the offenses are the same in fact and in law; (2) whether they are of the same legal character; (3) whether the same evidence will support both charges (see People v. Spitzer, 148 Misc. 97, 100, 101; Wharton, Criminal Law [12th ed.], § 394); (4) whether one crime is an essential ingredient of the other (22 C. J. S., Criminal Law, § 279, p. 419); (5) whether a conviction of a lesser or of a greater offense acts as a bar in the nature of an estoppel against the People or as a merger of the two (cf. Lohman v. People, 1 N. Y. 379; Wharton, Criminal Law, § 394).
Admittedly, a criminal act or series of acts, transaction or transactions can result in various offenses and be' punishable for each individual one if severable. Illustrative of the fore *18 going is the situation where a driver of a motor vehicle operates his car while in an intoxicated condition, does so in a reckless manner, and while his license is suspended — resulting in a separable offense as to each of such acts (People v. Skarczewski, 287 N. Y. 826); or where a thief, with felonious intent, breaks into a house and then takes the owner’s chattels therefrom and is separately charged with the burglary and the larceny. (People v. Snyder, 241 N. Y. 81.)
Such instances are readily distinguishable from the situation herein considered. Consideration of the stipulated proof leads to the inevitable conclusion that any act or treatment, apart from the giving of the medicine and the use of the “ rubber tube ”, was but incidental to such acts and manifests a meaning and purpose only when considered in connection therewith. As to such acts the court absolved the defendant Price; and the jury, under the charge of the court, absolved the defendant Mallach. Any “holding out ” by the defendants, or either of them, or any ministration, under the stipulated proof, was but a component part of the integrated offense constituting the alleged abortion.
The distinction between a severable and an integrated transaction is further- discussed and illustrations thereof are given by Wharton, who says (§ 394):
“Part of a single crime; prosecution for, and a conviction or acquittal of, is a bar to any subsequent prosecution based upon the whole or any part of the same crime; and a conviction of a crime charged in an indictment is an acquittal of all other offenses charged in the same indictment. And a conviction of a lesser offense bars a subsequent prosecution for a greater offense, in all those cases where the lesser offense is included in the greater offense, and vice versa. But a former trial and acquittal or conviction will not be a bar to a subsequent prosecution, unless the defendant could have been convicted on the same evidence in the former trial, of the offense charged in the subsequent trial. An acquittal or conviction for a minor offense included in the greater will not bar a prosecution for the greater if the court in which the acquittal or conviction was had was without jurisdiction to try the accused for the greater offense.
“ On plea of former acquittal or conviction, the accused must show that he was acquitted or convicted of the same accusation against him in a former trial; not of an entirely different offense growing out of the same state of facts or transaction. The proper test is: Was the matter set out in a second indictment admissible as evidence under the first indictment, and could a conviction have been properly maintained upon such evidence? *19 If the answer is yes, then the plea is sufficient; otherwise, it is not. Acquittal on a charge of crime is a bar to subsequent prosecution for the same offense under a different name, in all those cases where the accused might have been found guilty and sentenced on the offense charged in the later indictment under the former prosecution. Conviction or acquittal in one offense is a bar to a prosecution in another, in all those case where the later offense charged is a necessary element in, and constitutes an essential part of, the former. Thus, a plea of former conviction of burglary is sufficient in an indictment for robbery based on the same offense, when the record shows that, in order to prove the felonious intent in the former prosecution, the circumstances of the stealing were proved, and thus the same transaction, the robbery, was involved in both cases.” (Emphasis added.)
Perhaps as good a summary of the principle involved as can be found in the ramified treatment given to the subject by courts and text writers is the language in People ex rel. Kwiatkowski v. Trenkle, 169 Misc. 687, 694) quoted in turn from State v. Smith (43 Vt. 324) as follows: “We think the rule is now well established, that when one offense is a necessary element in and constitutes an essential part of another offense, and both are in fact but one transaction, a conviction or acquittal of one is a bar to the prosecution for the other.”
In People v. Silverman (281 N. Y. 457, 462) it is stated: “ In applying the constitutional safeguard against double jeopardy, this constitutional protection is not a mere matter of formal pleading. * * * A test is set up which considers evidence and not the theory of the pleader.”
Relator, in support of the writ, raises also the point of res judicata, arguing that the second count of the indictment charges defendants with the acts which are relied on, evidentially, to support the second count of the information. Specifically, the second count of the indictment taxed the defendants with administration of a drug and use of an instrument, whereas the second count of the information confines itself generally to the accusation that the defendants held themselves out as “ being able to diagnose, treat, operate and prescribe for a * * * physical condition ”.
Respondents may feel that the latter charge could be established by the testimony above summarized, of Anne Flynn to the effect that she told Mrs. Mallach she was feeling sick and that the latter said she would “ take care of her ”, followed by the administration of treatment, apart from the giving of any drug or the use of an instrument. In my opinion, however, such *20 portion of the proof cannot he considered apart from the latter acts, for the reasons stated. In view of the conclusion hereinabove reached, however, this point becomes unimportant.
Accordingly, the writ is sustained and defendants are discharged.